**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vanessa Lynn Rodriguez, | No. CV-20-00068-TUC-DTF |
| Petitioner, | **ORDER** |
| v. | |
| David C Shinn, et al., | |
| Respondents. | |

Petitioner Vanessa Rodriguez (Rodriguez or Petitioner) presently incarcerated in Arizona State Prison Complex-Perryville Lumley Unit in Goodyear, Arizona,[1] filed an Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 6.) Before the Court are the Amended Petition, Respondents' Answer to Petition for Writ of Habeas Corpus, and Petitioner's Reply to State's Response to Petition for Writ of Habeas Corpus. (Docs. 6, 19, 20.) The parties have consented to a decision being rendered by the undersigned United States Magistrate Judge. (Doc. 4, 17, 18.) As more fully set forth below, based on the pleadings, the Court will deny and dismiss the Amended Petition.

Petitioner has also filed motions to expand the record (Doc. 21), to her release on her own recognizance (Doc. 22), and to have an evidentiary hearing on procedurally defaulted claims (Doc. 23). These motions will be denied.

---

[1] The Court verified Petitioner's status through the Arizona Department of Corrections Inmate Datasearch. https://corrections.az.gov/public-resources/inmate-datasearch (last visited on September 15, 2021).

**BACKGROUND**

**State Trial Court Proceedings**

The State of Arizona charged Petitioner and her co-defendant Matthew Cordova (Co-Defendant or Cordova) with armed robbery, aggravated robbery, and kidnapping. (Doc. 19-1 at 3.) Cordova moved to sever his trial from Petitioner's, to suppress Petitioner's statements, and to dismiss or suppress evidence resulting from illegal search and seizure and illegal arrest. *Id.* at 6–7. Petitioner, through her attorney, joined in the motion to preclude and motions to dismiss/suppress, but not the motion to suppress co-defendant's statements. *Id.* at 7. The trial court took the matters under advisement and later denied the motions. *Id.* at 6–8. After a jury trial, Petitioner was convicted as charged and thereafter sentenced to concurrent terms of imprisonment, the longest of which is 10.5 years. *Id.* at 12, 18–19.

The Arizona Court of Appeals described the facts presented at the suppression hearing as follows:

> On an evening in November 2013, J.A. was selling alarm systems door-to-door in a residential area in Tucson. Rodriguez waved to J.A. and asked him to follow her, saying something about "[her] little nephew." J.A. followed Rodriguez around a corner and saw two men, each pointing a gun at him. The men forced J.A. to the ground and robbed him. J.A. took out a gun he was carrying and fired several shots towards both men before running away.
>
> Rodriguez arrived at University Medical Center (UMC) with her co-defendant, Matthew Cordova, within thirty or forty minutes after the first 9–1–1 call came in reporting shots had been fired near the residential area where J.A. had been robbed. Cordova had been shot in the back.
>
> Tucson Police Department Detective Brett Barber interviewed Rodriguez twice at the hospital. After Rodriguez gave her second statement, officers obtained a warrant to search a Ford Crown Victoria that was found near the scene of the robbery.

*State v. Rodriguez*, No. 2 CA-CR 2014-0272, 2015 WL 2452296, ¶¶ 2–4 (Ariz. App. May 20, 2015) (alteration in original) (footnote omitted). The court added that "The Ford was registered to Kenneth Thompson, whose name Rodriguez had mentioned to Barber at the hospital. Police searched the vehicle and found, among other things, 'a small black shirt or

1  something that could be used as a mask,' a red bandana, and a .40 caliber handgun." *Id.* at

2  n.1.

3        The post-conviction court described the facts surrounding Petitioner's statements to

4  law enforcement as follows:

> 5  Although a detective at the time of trial, James Brady was a
> 6  uniformed officer on November 12, 2013, the date he
> interviewed Defendant. (TR 04/30/14, p. 133). He was already
> 7  at University Medical Center when he received word that a
> person with a possible gunshot injury was in the emergency
> 8  room (*Id.* at 133, 135). When Officer Brady spoke with
> Defendant, he knew that officers in the Fort Lowell and First
> 9  Avenue location were investigating a shooting. (*Id.* at 133,
> 134). Although Officer Brady questioned Defendant about the
> 10 events leading up to her being at the hospital (*Id.* at 136), there
> is no indication that she was at that time considered a suspect
> 11 or that Officer Brady had any knowledge of the victim's report
> of the involvement of a woman in the robbery.

12     . . .

> 13 When Officer Brady spoke to Defendant, he walked with her
> "away from all the people in the waiting room" and talked with
> 14 her "outside the front door of the emergency department right
> in front of the door." (TR 04/30/14, p. 135). However, no
> 15 testimony or evidence in this case suggests that that Defendant
> was not free to leave. Defendant was not arrested or restrained
> 16 at the time. Brady testified he believed he left the hospital
> before the detectives showed up. (TR 04/30/14, p. 153).

17

18 (Doc. 19-1 at 143–44.) Prior to when Detective Barber questioned her, Petitioner was

19 arrested. *Id.* at 145.

> 20 Detective Barber testified that he advised Defendant of her
> Miranda rights "at the very beginning" of the first interview.
> 21 (RT, 05/01/14 p. 83). The interview was recorded and
> transcribed. Defendant said she understood her rights and
> 22 agreed to answer Detective Barber's questions. *Id.* at 84.

23

24 *Id.* at 145 n.3. He then conducted a second interview, which included the following

25 exchange:

> 26 Defendant said to Detective Barber, "I wanted to asked you
> before you turned on the thing if I can do (inaudible)?"
> 27 (Petitioner's Exhibit, Interview of Vanessa Rodriguez,
> 11/13/2103, 2:10–11). Barber: "If you can have what?"
> 28 Defendant: "Andy come." Barber: "Who is Yandi?"
> Defendant: "My, my attorney so I can say everything, but-".
> (*Id.* at 2:12–13, 16–17).

*Id.* at 146. Detective Barber asked for clarification. *Id.*

> Detective Barber told Defendant he could not talk to her at that point if she wanted her attorney present. "This is the deal, if you want to talk to your attorney here, then I can't talk to you. And what I'll do is I'll suggest that after you go to jail you get ahold of your attorney and you get ahold of us, okay?" (*Id.* at 2:18–21). "It seems to me you're asking for an attorney, which pretty much null and voids my ability to talk to you.["] (*Id.* at 2:23–25). . . . Detective Barber then asked the clarifying question, "Are you asking for an attorney?" to which Defendant replied, "No." (*Id.* at 3:1–2).
>
> . . .
>
> Defendant continued. "I'm just asking for my, I'm just asking for mine, because I want to see (inaudible).["] (*Id.* at 3:2–3). It is unclear whether "my" and "mine" refer to her attorney or to someone else, possibly her child. Defendant may have been asking to see her child, because Detective Barber next told her he was not going to go get her child. Then he said, "If you want to speak to an attorney, then we're going to have to stop this interview and, and do it another day with an attorney present, or you can tell me that you do not want an attorney and we can do it right now." (*Id.* at 3:8–12).
>
> A few minutes later Detective Barber asked Defendant, "Did you want to answer a couple of straight up questions?" and Defendant responded "Yeah." (*Id.* at 4:3–5). Although Defendant answered some of Detective Barber's questions, the detective stopped the interview after a few minutes because Defendant was crying and the interview was "not working out". (*Id.* at 6:13).
>
> At beginning of the interview, the police seem to have already determined she was headed to jail (*Id.* at 2:19–21 ). So she was not being threatened with jail for not talking during this interview. Later in the interview, when she asks what will happen to her, Detective Barber says, "I already told you, you've been arrested, tonight you're going to jail . . . But right now since I arrested you, you're going to jail tonight." (*Id.* at 3:22–23, 3:26–4:1 ). At no point did the detective threaten her with jail if she did not talk to him.

*Id.* at 146–47.

The facts as recited by the state courts are entitled to a presumption of correctness. *See* § 2254(e)(1); *Runningeagle v. Ryan*, 686 F.3d 758, 763 n.1 (9th Cir. 2012) (rejecting argument that statement of facts in Arizona Supreme Court opinion should not be afforded presumption of correctness).

**Proceedings in the Arizona Court of Appeals**

On July 2, 2014, Petitioner filed a notice of appeal. (Doc. 19-1 at 22.) Petitioner's opening brief raised only one issue: "Did the trial court abuse its discretion by failing to suppress evidence seized as the fruits of Vanessa Rodriguez's illegal arrest." *Id.* at 28. She argued that the trial court abused its discretion in failing to suppress statements and evidence obtained following the search of the Ford Crown Victoria and her illegal arrest. *Id.* at 29, 42.

The Arizona Court of Appeals concluded that the trial court did not abuse its discretion in denying Petitioner's motion. *Rodriguez*, 2015 WL 2452296, ¶¶ 15, 18. It affirmed Petitioner's convictions and sentences. *Id.* ¶ 19.

**Proceedings in the Arizona Supreme Court and the Supreme Court of the United States**

Petitioner filed a petition for review before the Arizona Supreme Court. On December 1, 2015, the Arizona Supreme Court denied the petition without explanation. (Doc. 19-1 at 76.) Petitioner then filed a petition for writ of certiorari with the Supreme Court of the United States. On May 16, 2016, the Supreme Court of the United States denied Rodriguez's petition for writ of certiorari. *Rodriguez v. Arizona*, 136 S. Ct. 2018, 2018 (2016).

**State Court Post-Conviction Relief Proceedings**

Petitioner timely filed a notice for post-conviction relief (PCR). (Doc. 19-1 at 99.) The post-conviction court appointed counsel. *Id.* at 104. Petitioner's attorney filed a notice that he found no colorable claims to raise. *Id.* at 106–09. The court permitted Petitioner to file a pro se PCR petition. *Id.* at 112.

Petitioner asserted the admission of her statements to Officer Brady violated her Sixth Amendment Right to counsel. *Id.* at 120–21. She also contended Detective Barber violated her rights under the Fifth and Sixth Amendments when interrogating her. *Id.* at 121. She reasoned that she was not informed of the nature of the inquiry prior to waiving her rights under *Miranda* during the first statement and that, between the first and second

statements, Detective Barber threatened to have her daughter removed by the Arizona Department of Child Safety if she did not confess. *Id.* at 122. She also claimed Detective Barber continued questioning her after she unambiguously requested her attorney. *Id.*

Petitioner also challenged the admission of illegally seized evidence under the Fourteenth Amendment. *Id.* at 124. She argued the Crown Victoria had been illegally seized. *Id.* She also claimed the constitutional violations during her trial amounted to structural error. *Id.* at 126. Finally, Petitioner claimed that her trial counsel had been ineffective in failing to challenge her statements to police and by not putting "forth any effort at all." *Id.* at 127. She pointed to the failure to join Cordova's motion to suppress her statements as evidence that her attorney was ineffective. *Id.*

On March 15, 2017, the post-conviction court dismissed Petitioner's PCR petition. *Id.* at 150. First, the court reasoned that Petitioner was precluded from arguing the evidence from the Crown Victoria should not have been admitted. *Id.* at 140. The court noted that this argument had been adjudicated on its merits during Petitioner's appeal. *Id.* The court rejected the structural error argument. *Id.* at 141. The court only considered the statements to Officer Brady and Detective Barber in the context of Petitioner's ineffective assistance of counsel claim because the admission of the statement had not been previously challenged, apart from the allegation that they stemmed from Petitioner's illegal arrest, and could not be challenged during the PCR proceeding. *Id.* at 142.

The post-conviction court denied Petitioner's ineffective assistance of counsel claim. *Id.* at 144, 147, 149. It stated that Officer Brady had been investigating the circumstances of the shooting, "not questioning Defendant as a suspect." *Id.* at 143. Additionally, the court explained that there is no suggestion that Petitioner was in custody at that time. *Id.* at 144. The court concluded that Petitioner did not make an unambiguous request for an attorney and that "Detective Barber took care to make certain that [Petitioner] understood her right to an attorney." *Id.* at 146–47. The court also questioned if Petitioner told her attorney that Detective Barber threatened to have her daughter removed. *Id.* at 147 n.4. It noted that Petitioner could not have joined Cordova's motion to suppress her

statements under the Confrontation Clause because it only applies to co-defendant's statements. *Id.* at 147. The court discounted Petitioner's claim that her trial counsel did not put forth sufficient effort as merely "speculative and unsupported assertions" that do not rise to establishing a colorable claim of ineffective assistance of counsel. *Id.* at 149.

On April 4, 2017, Petitioner filed a notice of appeal from PCR order. *Id.* at 152. On April 11, 2017, the Arizona Court of Appeals informed Petitioner that her Petition for Review did not comply with Arizona Rules of Criminal Procedure 32.9. *Id.* at 154. The court provided Petitioner an opportunity to file a Rule 32 Petition for Review. *Id.* Petitioner moved to stay the petition for review because she had requested a motion for rehearing before the post-conviction court. *Id.* at 161. The appellate court denied Petitioner's request. *Id.* at 163. On June 20, 2017, the court dismissed Petitioner's petition for review for noncompliance. *Id.* at 165. After the post-conviction court denied her motion for rehearing, Petitioner filed a "Motion for Rehearing" before the appellate court. (Doc. 19-1 at 173; Doc. 19-2 at 3.)

Petitioner again argued she had requested an attorney before the second interview with Detective Barber and thus the subsequent questioning violated her *Miranda* rights. (Doc. 19-2 at 4.) Petitioner alleged she was in custody when Officer Brady asked her questions and that she was entitled to the protections of *Miranda*. *Id.* at 9. Petitioner claimed she had not raised the introduction of the Crown Victoria during the direct appeal and was therefore not precluded from raising the argument during her PCR proceedings. *Id.* at 10. She asserted that she could not waive her arguments because Arizona considers constitutional claims under fundamental error review. *Id.* She raised an ineffective-assistance-of-counsel claim, claiming her attorney failed to challenge the admission of her statements that were taken in violation of the Constitution because she was in custody during her statement to Officer Brady, she unambiguously requested an attorney, and Detective Barber had threatened custody of her daughter prior to the second interview. *Id.* at 12–14.

On April 25, 2018, the Arizona Court of Appeals granted relief but denied review.

*State v. Rodriguez*, No. 2 CA-CR 2017-0329-PR, 2018 WL 1956153, ¶ 6 (Ariz. App. April 25, 2018). Petitioner sought review in the Arizona Supreme Court, which denied relief on November 1, 2018. (Doc. 19-2 at 23.) On March 22, 2019, the Arizona Court of Appeals issued its mandate. *State v. Rodriguez*, CR20134985 (Ariz. Super. Ct. Mar. 22, 2019), http://www.agave.cosc.pima.gov/agavepartners/GetImage.aspx?ID=24256609.

**Federal Habeas Corpus Proceeding**

On February 13, 2020, Petitioner filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. (Doc. 1.) The district court dismissed the petition with leave to file an amended petition within 30 days. (Doc. 5 at 4.) On May 15, 2020, Petitioner filed the amended petition for writ of habeas corpus. (Doc. 6.)

The grounds for relief alleged in the Amended Petition are as follows:

"**Ground One:** Petitioner's Sixth Amendment right to counsel was violated, resulting in the admission at trial [of] statements obtained [from] petitioner when counsel was guaranteed." (Doc. 6 at 6.) Petitioner claims the state illegally admitted statements obtained during post-arrest questioning after she had invoked her right to an attorney. *Id.*

"**Ground Two:** Petitioner's Fifth Amendment [rights were] violated by the state's improper admission of statements made in violation of *Miranda*." *Id.* at 7. Petitioner challenges three instances in which she made statements that the State later admitted at trial. *Id.* First, Officer Brady did not provide *Miranda* warnings before questioning her. *Id.* Second, Detective Barber "masked" his questions as obtaining a witness statement in his investigation into the source of Petitioner's gunshot injuries. *Id.* Third, Detective Barber continued questioning Petitioner, ignoring her request for her attorney. *Id.* This third claim seems to be the same incident as Ground One.

"**Ground Three:** Petitioner's Sixth Amendment right to effective counsel was violated by standing trial with incompetent counsel." *Id.* at 8. Petitioner's counsel did not move to suppress or challenge Petitioner's statements or join in on Co-Defendant's challenges to Petitioner's statements. *Id.*

"**Ground Four:** Petitioner's Fourteenth Amendment right to Due Process was

- 8 -

1  violated by the introduction of evidence at trial obtained in an illegal arrest and an illegal

2  search and seizure." *Id.* at 9. Petitioner contends that the trial court erred in denying her

3  motion to suppress evidence obtained following her illegal arrest and the illegal search of

4  the Ford Crown Victoria. *Id.* Petitioner adds that the trial court's order did not include

5  anything "remotely close to probable cause." *Id.* She argues that no one identified either

6  her or her co-defendant as the robbers, that the victim did not identify her in a photo array,

7  that the eyewitness's description did not match Petitioner, and that Co-Defendant is not

8  African American. *Id.* Further, Petitioner asserts that "the [trial] court was aware that the

9  police were specifically told to leave the Ford Crown Victoria alone, by a Judge, and they

10  disregarded that order and seized the vehicle." *Id.*

## TIMELINESS

12  Whether a petition is time-barred by the statute of limitations is a threshold issue

13  that must be resolved before considering other procedural issues or the merits of the

14  individual's claim. *See White v. Klitzkie,* 281 F.3d 920, 921–22 (9th Cir. 2002). The

15  Anti-Terrorism and Effective Death Penalty Act's (AEDPA) one-year statute of limitations

16  applies here. *See* 28 U.S.C. § 2244(d)(1); *Furman v. Wood*, 190 F.3d 1002, 1004 (9th Cir.

17  1999). The limitations period begins to run on the date when "the judgment became final

18  by the conclusion of direct review or the expiration of the time for seeking such review."

19  § 2244(d)(1)(A). For petitioners who pursue direct review to the Supreme Court of the

20  United States, "the judgment becomes final at the 'conclusion of direct review'—when

21  th[e] Court affirms a conviction on the merits or denies a petition for certiorari." *Gonzalez*

22  *v. Thaler*, 565 U.S. 134, 150 (2012). Otherwise, "the judgment becomes final at the

23  'expiration of the time for seeking such review'—when the time for pursuing direct

24  review" expires. *Id.* "The time during which a properly filed application for State

25  post-conviction or other collateral review with respect to the pertinent judgment or claim

26  is pending shall not be counted toward any period of limitation." § 2244(d)(2).

27  Here, Petitioner timely appealed her convictions and sentences. (Doc. 19-1 at 22.)

28  Her appeal to the Supreme Court of the United States was denied on May 16, 2016, at

which point her judgment was final. *Rodriguez v. Arizona*, 136 S. Ct. at 2018; *see Gonzalez*, 565 U.S. at 150. Petitioner timely filed her notice for PCR before May 16, 2016. (Doc. 19-1 at 99.) On March 22, 2019, the Arizona Court of Appeals issued its mandate on Petitioner's PCR petition. *Rodriguez*, CR20134985 (Ariz. Super. Ct. Mar. 22, 2019); *see Menendez v. Ryan*, No. CV-14-2436-PHX, 2015 WL 8923410, at *9–10 (D. Ariz. Oct. 20, 2015), *R. & R. accepted by* 2015 WL 8758007, at *5 (D. Ariz. Dec. 15, 2015). The one-year limitations period under the AEDPA was statutorily tolled to March 22, 2019. *See* § 2244(d)(2). Petitioner's initial petition for writ of habeas corpus was filed on February 13, 2020, (see Doc. 1) well within the AEDPA's one-year limitations period.

Hence, the Amended Petition is timely.

## EXHAUSTION/PROCEDURAL DEFAULT

Respondents urge that all but Petitioner's ineffective-assistance-of-counsel claim are procedurally defaulted without excuse or are not cognizable in a federal habeas proceeding. (Doc. 19 at 5.) As set forth below, this Court agrees.

### Legal Principles

A district court may consider a petitioner's application for a writ of habeas corpus only if they have "exhausted the remedies available in the courts of the State." § 2254(b)(1)(A). The exhaustion requirement prevents unnecessary federal court adjudication and affords states the opportunity to correct any constitutional violation. *Rose v. Lundy*, 455 U.S. 509, 518 (1982).

To exhaust a claim, the petitioner must "fairly present" it in each appropriate state court, alerting the courts to its federal nature. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In Arizona, a claim not involving a life sentence or death penalty is exhausted if it is presented to the Arizona Court of Appeals; it need not be appealed to the Arizona Supreme Court. *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999). For a claim to be fairly presented, the petitioner must have clearly stated its federal basis and nature, along with relevant facts, and the claim must be the "substantial equivalent" to the one presented to the state. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see Cooper v. Neven*, 641 F.3d 322, 327 (9th Cir.

2011). If evidence puts the claim in significantly different legal or evidentiary posture, the state must have an opportunity to examine it. *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014) (quoting *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988)).

A petitioner who fails to follow a state's procedural requirements for presenting a claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. *See Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991). Thus, to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted and is generally barred from habeas relief. *See id.*

Claims may be procedurally barred from federal habeas review based upon either an express or implied bar. *See Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). If a state court expressly applied a procedural bar when a petitioner attempted to raise a claim in state court, and the procedural bar is both independent and adequate, review of the merits of the claim by a federal habeas court is generally barred. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court."). An implied procedural bar may be applied to unexhausted claims where state procedural rules make a return to state court futile. *Coleman*, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now find the claims procedurally barred"); *Franklin v. Johnson*, 290 F.3d 1223, 1230–31 (9th Cir. 2002) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) ("[T]he procedural default rule barring consideration of a federal claim 'applies . . . if it is clear that the state court would hold the claim procedurally barred.'")).

In Arizona, a petitioner's claim may be procedurally defaulted where they have waived their right to present it to the state court "at trial, on appeal, or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(3) (2018). "If an asserted claim is of sufficient constitutional magnitude, the state must show that the defendant 'knowingly,

voluntarily and intelligently' waived the claim." *Id.*, 2002 cmt. Neither Rule 32.2. nor the Arizona Supreme Court has defined claims of "sufficient constitutional magnitude" requiring personal knowledge before waiver. *See id.*; *see also Stewart v. Smith*, 46 P.3d 1067 (Ariz. 2002). Arizona courts have recognized few such rights, including right to waive counsel and represent oneself, right to a jury trial, right to a twelve-person jury, and right to plead guilty. *State v. Swoopes*, 166 P.3d 945, ¶ 28 (Ariz. App. 2007) (collecting cases). The United States Court of Appeals for the Ninth Circuit recognized that this assessment "often involves a fact-intensive inquiry" and the "Arizona state courts are better suited to make these determinations." *Cassett v. Stewart*, 406 F.3d 614, 622 (9th Cir. 2005).

**Procedural Status of Petitioner's Claims**

**Ground One:** Petitioner claims her Sixth Amendment right to counsel was violated when a detective ignored her request for an attorney. (Doc. 6 at 6.)

Petitioner presented this claim during her PCR proceedings. (Doc. 19-1 at 122.) The post-conviction court denied the claims as precluded and dismissed petition. *Id.* at 150. She raised this issue in her petition for review. (Doc. 19-2 at 4–7.) The appellate court concluded that Petitioner did not identify any material error in the post-conviction court's ruling and that the claims "regarding her statements to law enforcement officers were precluded as waived." *Rodriguez*, 2018 WL 1956153, ¶ 4.

Petitioner now argues that this claim cannot be precluded because the right to counsel is fundamental and of "sufficient constitutional magnitude," requiring waiver be knowing, voluntary, and intelligent. (Doc. 20 at 2–5.) She argues without citation that this claim involves a fundamental right requiring personal waiver. *Id.* at 3.

Rule 32.2(a)(3) provides adequate and independent state ground for the decision. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002) ("Rule 32.2(a)(3) determinations are independent of federal law because they do not depend upon a federal constitutional ruling on the merits.") *Murray v. Schriro*, 745 F.3d 984, 1016 (9th Cir. 2014). Further, Arizona state courts were in a better position to make the waiver determination and this Court will not reconsider the state court's determination. *See Cassett*, 406 F.3d at 622.

This claim has been procedurally defaulted and should be dismissed. As explained below, there are no grounds upon which the Court can excuse the procedural default. The Court will only consider the merits of this claim to the extent the ineffective-assistance-of-counsel claim requires.[2]

**Ground Two:** Petitioner alleges the trial court violated her Fifth Amendment rights by admitting statements taken in violation of *Miranda*. (Doc. 6 at 7.)

In her PCR petition, Petitioner argued her statements to law enforcement violated *Miranda*. (Doc. 19-1 at 120–23.) The post-conviction court denied the claims as precluded and dismissed petition. *Id.* at 150. In her petition for review, Petitioner raised the issue again. (19-2 at 4–9.) The court of appeals concluded that Petitioner's claim was precluded as waived. *Rodriguez*, 2018 WL 1956153, ¶ 3. Petitioner does not challenge the procedural default of this claim. (Doc. 20 at 7–9.)

This claim has been procedurally defaulted and should be dismissed. As explained below, there are no grounds upon which the Court can excuse the procedural default. Its merits will be discussed as required by the ineffective-assistance-of-counsel claim.

**Ground Three:** Petitioner claims ineffective assistance of trial counsel for failing to join Co-Defendant's motion to suppress Petitioner's statements or otherwise challenge the admissibility of her statements. (Doc. 6 at 8.)

In Petitioner's PCR petition, she claimed ineffective assistance of counsel for failing to move to suppress Petitioner's statements to law enforcement, specifically pointing to failing to join Co-Defendant's motion to suppress the statements. (Doc. 19-1 at 127.) The post-conviction court dismissed Petitioner's claim on the merits. *Id.* at 144–47. It specifically noted that Petitioner could not have properly joined her Co-Defendant's motion to suppress her statements based on the Confrontation Clause. *Id.* at 147.

In her petition for review before the Arizona Court of Appeals, Petitioner alleged ineffective assistance of trial counsel based on failure to challenge her statements,

---

[2] Even assuming this claim were properly exhausted, it would fail on the merits. As explained below the Sixth Amendment right to counsel had not attached during Petitioner's interaction with Detective Barber.

including joining Co-Defendant's motion. (Doc. 19-2 at 12–14.) The court of appeals concluded that Petitioner did not identify any material error in the post-conviction court's ruling. *Rodriguez*, 2018 WL 1956153, ¶ 4.

This Court determines that Petitioner presented her claim alleged in Ground Three to the state courts. The Court will treat Ground Three as properly exhausted. Its merits are discussed below.

**Ground Four:** Petitioner contends the trial court violated her right to Due Process by admitting evidence gathered after her illegal arrest and illegal search and seizure of the Crown Victoria. (Doc. 6 at 9.)

On appeal, Petitioner challenged the denial of her motion to suppress evidence seized as fruits of her illegal arrest (Doc. 19-1 at 28, 42–63.) The appellate court found that there was probable cause to arrest Petitioner before she spoke with Detective Barber. *Rodriguez*, 2015 WL 2452296, ¶ 15. Further, it considered the seizure of the Crown Victoria and concluded that Petitioner did not have standing to challenge its seizure. *Id.* ¶¶ 17–18.

Before the post-conviction court, Petitioner asserted that introducing illegally seized evidence violated her Fourteenth Amendment. (Doc. 19-1 at 124.) The post-conviction court ruled that Petitioner was precluded from putting forth this issue. *Id.* at 140. Petitioner raised the issue in her petition for review. (19-2 at 9–12.) The court of appeals concluded that Petitioner's claim was precluded because the court had already affirmed the denial of Petitioner's motion to suppress on direct appeal. *Rodriguez*, 2018 WL 1956153, ¶ 4.

Petitioner presented this claim to the state courts. (Doc. 19-1 at 124, 140.) However, the Due Process Clause is not an appropriate basis for Petitioner's claim. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989))). But Fourth Amendment claims can only be reviewed in a § 2254 proceedings

"if the state court proceeding denied the applicant an 'opportunity for full and fair litigation of a Fourth Amendment claim.'" *Ewell v. Scribner*, 490 Fed. App'x 891, 892–93 (9th Cir. 2012) (quoting *Stone v. Powell*, 428 U.S. 465, 482 (1976)); *see also Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided."). The state provided a full and fair litigation of the Fourth Amendment claims. The trial court held a hearing on the motion to suppress and the appellate court considered the merits of Petitioner's Fourth Amendment arguments. *Rodriguez*, 2015 WL 2452296, ¶¶ 2, 7–18. Thus, the Fourth Amendment claims would not be cognizable here.

Petitioner's claim in Ground Four are not cognizable. *See Ewell*, 490 Fed. App'x at 892–93. Hence, the claims in Ground Four will be dismissed.

The Court will dismiss the claims in grounds One, Two, and Four as they are either not cognizable or are procedurally defaulted.

**The Procedural Default Cannot be Excused**

Federal habeas review of a procedurally defaulted claim is barred unless the default is excused. A procedural default may be excused if a habeas petitioner establishes either (1) "cause" and "prejudice," or (2) that a fundamental miscarriage of justice has occurred. *Sawyer v. Whitley*, 505 U.S. 333, 338–39 (1992). "Cause" that is sufficient to excuse a procedural default is "some objective factor external to the defense" which precludes a petitioner's ability to pursue the claim in state court. *Murray v. Carrier,* 477 U.S. 478, 488 (1986). "Prejudice" in the habeas context means actual, objective harm resulting from the alleged error. *United States v. Frady*, 456 U.S. 152, 170 (1982) (habeas petitioners "shoulder the burden of showing, not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage" and infected state proceedings with errors of constitutional dimensions). A fundamental miscarriage of justice may occur where a constitutional violation has probably resulted in the conviction of an innocent petitioner. *Murray*, 477 U.S. at 496 (merits of defaulted claim could be

reached "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent"). "[A] petitioner does not meet the threshold requirement [of establishing actual innocence] unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). The actual innocence gateway requires that a petitioner present new evidence that is not merely cumulative or speculative. *Larsen v. Soto*, 742 F.3d 1083, 1096 (9th Cir. 2013).

"Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if," there was either ineffective counsel or no counsel during the initial-review collateral proceeding. *Martinez v. Ryan*, 566 U.S. 1, 17 (2012). *Martinez* created a narrow exception to the general rule that does not extend to ineffective assistance of appellate counsel claims. *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). *Martinez* is limited to underlying claims of ineffective assistance of trial counsel. "Expanding *Martinez* would not only impose significant costs on the federal courts, but would also aggravate the harm to federalism that federal habeas review necessarily causes." *Id.* at 2069–70.

Long after this matter was fully briefed, Petitioner asserted that her ineffective appellate counsel caused the procedural default. (Doc. 23 at 8.) *Martinez* would permit this Court to excuse procedural default of a claim of ineffective assistance of trial counsel, not ineffective assistance of appellate counsel or the substantive claim. *See Davis*, 137 S. Ct. at 2062; *Martinez*, 566 U.S. at 17. As Petitioner's claim for ineffective assistance of trial counsel is not procedurally defaulted, she has not stated a claim for excusing the procedural default on her other claims. Further, the Court does not find either "cause" and "prejudice" or that a fundamental miscarriage of justice occurred. The procedural default will not be excused.

1

## MERITS

The only claim properly before this Court is Petitioner's claim that her counsel was ineffective for failing to challenge admission of her statements to law enforcement or for failing to join her co-defendant's motion to suppress her statements. (Doc. 6 at 8.) This claim is without merit and shall be dismissed.

**Merits Review Under AEDPA**

Congress intended the AEDPA to foster federal-state comity and further society's interest in the finality of criminal convictions. *Panetti v. Quarterman*, 551 U.S. 930, 945 (2007) ("[AEPDA's] design is to 'further the principles of comity, finality, and federalism.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003))). Congress's very purpose in enacting the AEPDA was "to restrict the availability of habeas corpus relief." *Greenawalt v. Stewart*, 105 F.3d 1268, 1275 (9th Cir. 1997), *abrogated on other grounds as recognized by Jackson v. Roe*, 425 F.3d 654, 658–61 (9th Cir. 2005).

In the AEDPA, Congress set forth "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (cleaned up). The district court may grant a writ of habeas corpus, "only on the basis of some transgression of federal law binding on the state courts." *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985).

The AEDPA limits the availability of habeas relief for a claim adjudicated on the merits to circumstances where the state court's disposition either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). Petitioner bears the burden of proving that her claims fit one of these criteria. *Pinholster*, 563 U.S. at 181; *Lambright v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004).

A state-court decision is "contrary to" clearly established federal law when the court

applied a rule of law that contradicts the governing law set forth in Supreme Court precedent, or encountered a set of facts that are "materially indistinguishable" from a Supreme Court decision and yet reached a different result than the Supreme Court. *Early v. Packer*, 537 U.S. 3, 8 (2002). Under § 2254's "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "Rather, that application must also be unreasonable," *id.*, or defective, *Jones v. Ryan*, 1 F.4th 1179, 1193 (9th Cir. 2021). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). *Richter* explained:

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair[-]minded disagreement.

*Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d)(2) sets "a 'daunting standard—one that will be satisfied in relatively few cases.'" *Loher v. Thomas*, 825 F.3d 1103, 1112 (9th Cir. 2016) (*Hernandez v. Holland*, 750 F.3d 843, 857 (9th Cir. 2014)).

In determining whether the state court's resolution of a claim was contrary to, or an unreasonable application of, clearly established federal law, this Court must review the last reasoned state-court judgment addressing the claim. *Cook v. Schriro*, 538 F.3d 1000, 1015 (9th Cir. 2008) (citing *Ylst*, 501 U.S. at 803). The reviewing federal court is to be "particularly deferential to [its] state-court colleagues." *Loher*, 825 F.3d at 1112 (*Hernandez*, 750 F.3d at 857). The federal habeas court presumes the state court's factual determinations are correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *See* § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden

of rebutting the presumption of correctness by clear and convincing evidence."); *see also, Miller-El*, 545 U.S. at 240 (describing standard as deferential and "demanding," although not impossible).

**Review of Ineffective Assistance of Counsel Claims Under AEDPA**

The Supreme Court set forth the clearly established federal law governing ineffective-assistance-of-counsel claims in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Pinholster*, 563 U.S. at 189. To establish that counsel was constitutionally ineffective under *Strickland*, "a defendant must show both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Deficient performance is established when counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

In determining deficiency, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This requires courts to consider "the totality of the evidence before the judge or jury." *Id.* at 695. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101. "This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Id.*

Petitioner asserts that the AEDPA deference does not apply to this claim because the post-conviction court did not specify which prong of *Strickland* was dispositive and because it did not hold an evidentiary hearing. (Doc. 20 at 10–11.) To reject the state court's determination of facts, Petitioner must show the facts are unreasonable based on the evidence presented to the state court or that the process was so defective that "any appellate

court to whom the defect is pointed out would be unreasonable in holding that the state court's fact-finding process was adequate." *See Jones*, 1 F.4th at 1193 (quoting *Tayler v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), *overruled on other grounds by Murray*, 745 F.3d at 999–1000 (9th Cir. 2014)); *see also Wood v. Allen*, 558 U.S. 290, 301 (2010). Petitioner has not done so; thus, this Court accepts the state court's determination and affords it the appropriate deference.

Petitioner argues that her trial counsel was ineffective in not challenging admission of her statements to law enforcement. (Doc. 6 at 8.) Specifically, she mentions his failure to join her co-defendant's motion to suppress Petitioner's statements under the Confrontation Clause and to challenge admission of her statements under the Fifth and Sixth Amendments. *Id.* The Court finds that these claims lack merit and must be dismissed.

**Joining Co-Defendant's Motion**

Petitioner maintains that her trial counsel was ineffective in failing to join Cordova's motion to suppress her statements. *Id.*

The post-conviction court rejected Petitioners claim because "Cordova's motion to suppress [Petitioner]'s statement only as to him was based on the Confrontation Clause," which "only applies when the co-defendant's confession or statements explicitly implicate the defendant." (Doc. 19-1 at 147.) The court concluded that Petitioner could not properly join the motion and that her trial counsel was therefore not ineffective in not joining it. *Id.*

To be successful in the first instance, Petitioner needed to show that trial counsel's performance was deficient and that there is a reasonable probability that the court would have granted the motion to suppress based on her right to confrontation. *See Knowles*, 556 U.S. at 122. To prevail here, Petitioner must show that the state courts were unreasonable in their conclusion the trial counsel's performance was not deficient and she was not prejudiced by the failure to file the motion. *See Richter*, 562 U.S. at 100.

The Confrontation Clause requires that accused persons "be confronted with the witnesses against [them]." U.S. Const. ament. VI. "The Sixth Amendment . . . prohibits the introduction of testimonial statements by a nontestifying witness, unless the witness is

'unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Ohio v. Clark*, 576 U.S. 237, 243 (2015) (quoting *Crawford v. Washington*, 541 U.S. 36, 54 (2004)). Statements made by a defendant do not present a Confrontation Clause problem. *See United States v. Nazemian*, 948 F.2d 522, 525–26 (9th Cir. 1991) ("If the statements properly are viewed as Nazemian's own, then there would be no confrontation clause issue since Nazemian cannot claim that she was denied the opportunity to confront herself."). However, a testimonial admission from a non-testifying co-defendant that incriminates the defendant implicates Confrontation Clause protections. *See Bruton v. United States*, 391 U.S. 123, 126 (1968); *see also Lucero v. Holland*, 902 F.3d 979, 983 (9th Cir. 2018) (stating the *Bruton* rule). Petitioner is not objecting to her co-defendant' statements, but her own. Petitioner has not presented a viable Confrontation Clause argument to exclude her own statements.

Petitioner has not stated a colorable claim that the state courts' rulings were objectively unreasonable or contrary to established federal law in denying her claim that her trial counsel was ineffective in not joining her co-defendant's motion to suppress her statement based on the Confrontation Clause. *See Richter*, 562 U.S. at 100; *Strickland*, 466 U.S. at 688.

**Fifth Amendment**

In her Petition, Petitioner alleges that her statements were taken in violation of her Fifth Amendment rights in three ways. (Doc. 6 at 7–8.) The Court will incorporate the allegations in Ground Two into her claim of ineffective assistance of counsel. First, she argues that Officer Brady conducted a custodial interrogation absent *Miranda* warnings. *Id.* at 7. Second, she asserts that Detective Barber "masked" the first interrogation as a gathering a "witness's statement" and never "asked if she wished to answer questions as a suspect of an armed robbery." *Id.* Finally, she contends Detective Barber ignored her request for an attorney. *Id.* Before the state and in her reply, Petitioner alleged that Detective Barber coerced her into the second interview by threatening custody of her daughter. (Doc. 19-2 at 14; Doc. 20 at 12–13.) However, this allegation is missing from

1  her Petition; therefore, the Court will not address it further.

2  The Fifth Amendment prohibits a person from being "compelled in any criminal

3  case to be a witness against himself." U.S. Const. amend. V. Because the "circumstances

4  surrounding in-custody interrogation can operate very quickly to overbear" an individual's

5  will, the Supreme Court has held that an individual "must be clearly informed that he has

6  the right to consult with a lawyer" prior to a custodial interrogation. *Miranda v. Arizona*,

7  384 U.S. 436, 469, 471 (1966). The question is whether the individual is in custody, not

8  whether they are the "focus" of the investigation. *Beckwith v. United States*, 425 U.S. 341,

9  347 (1976). "Ploys to mislead a suspect or lull him into a false sense of security that do not

10  rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns."

11  *Illinois v. Perkins*, 496 U.S. 292, 297 (1990); *see Colorado v. Spring*, 479 U.S. 564, 577

12  (1987) ("[A] suspect's awareness of all the possible subjects of questioning in advance of

13  interrogation is not relevant to determining whether the suspect voluntarily, knowingly,

14  and intelligently waived his Fifth Amendment privilege.").

15  "Custody" requires a fact intensive question of whether, when considered

16  objectively, a "reasonable person [would] have felt he or she was not at liberty to terminate

17  the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (alteration in

18  *Howes*) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)). This inquiry based on

19  the objective circumstances and does not include "the subjective views harbored by either

20  the interrogating officers or the person being questioned." *Stansbury v. California*, 511

21  U.S. 318, 323 (1994). The Ninth Circuit has identified five factors to consider "(1) the

22  language used to summon the individual; (2) the extent to which the defendant is

23  confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4)

24  the duration of the detention; and (5) the degree of pressure applied to detain the

25  individual." *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009) (quoting *United*

26  *States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002)). Whether the individual was arrested after

27  the interrogation does not determine if they were in custody for *Miranda*. *See Berkemer v.*

28  *McCarty*, 468 U.S. 420, 442 (1984).

"[A] suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present." *Davis v. United States*, 512 U.S. 452, 458 (1994). This is part of *Miranda*'s prophylactic purpose. *Id.* Invocation of the *Miranda* right to counsel involves an unambiguous request for counsel. *Id.* at 459. Ambiguous or equivocal statements such that "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," the officer is not required to cease questioning. *Id.* at 459, 462 (affirming denial of suppression when defendant asked, "Maybe I should talk to a lawyer" and law enforcement officers clarified whether the suspect would like an attorney); *Petrocelli v. Baker*, 869 F.3d 710, 723–24 (9th Cir. 2017) (found defendant's statements that he had an attorney to answer his question and that he just needed "to have something answered" was not an unambiguous invocation of counsel). Officers may clarify if the suspect would like an attorney, but they are not required to do so. *Davis*, 512 U.S. at 461.

First, Petitioner alleges her trial counsel should have moved to suppress her statements to Officer Brady because she was in custody during the interaction. (Doc. 6 at 7–8.) Petitioner's primary argument is that she was in custody from the first interview because Officer Brady suspected her and because she was later detained and arrested. (Doc. 20 at 6–7.) Officer Brady's uncommunicated subjective views do not bear on the determination of custody. *See Stansbury*, 511 U.S. at 323. Further, interactions are not transformed into custody merely because the person is later subject to custody or arrest. *See McCarty*, 468 U.S. at 442. Petitioner has not stated a colorable claim that the state courts' rulings were objectively unreasonable or contrary to established federal law in denying her claim that her trial counsel was ineffective in failing to challenge the admissibility of the statements to Officer Brady under *Miranda*. *See Richter*, 562 U.S. at 100; *Strickland*, 466 U.S. at 688.

Second, Petitioner contends that her attorney should have contested the admissibility of her statements to Detective Barber during their first interview because he "masked" his intention to question her as a suspect in the armed robbery. (Doc. 6 at 7–8.)

1    Law enforcement officers do not need to reveal their intention or any of their suspicions to

2    a suspect. *See Perkins*, 496 U.S. at 297; *Spring*, 479 U.S. at 577. Petitioner has not stated

3    a colorable claim that the state courts' rulings were objectively unreasonable or contrary to

4    established federal law in denying her claim that her trial counsel was ineffective in not

5    moving to suppress these statements. *See Richter*, 562 U.S. at 100; *Strickland*, 466 U.S. at

6    688.

7          Third, Petitioner asserts that her trial counsel should have challenged her statements

8    to Detective Barber during their second interrogation because she requested an attorney.

9    (Doc. 6 at 7–8.) Petitioner contends that "If an individual indicates in any manner that he

10   wants an attorney, the interrogation must cease until an attorney is present." (Doc. 20 at 9.)

11   This is not the law. As explained above, invocations for counsel must be unambiguous and

12   unequivocal. *See Davis*, 512 U.S. at 461. Here, the state court concluded that Petitioner did

13   not make an unambiguous or unequivocal request for an attorney and that Detective Barber

14   clarified with Petitioner whether she would like an attorney. (Doc. 19-1 at 146.) Petitioner

15   asked to speak with "[her] attorney so [she could] say everything . . . ." *Id.* Detective Barber

16   then explained the process for getting an attorney and clarified if Petitioner was requesting

17   an attorney. *Id.* Petitioner said, "No." *Id.* Thus, the state courts' rulings were not objectively

18   unreasonable or contrary to established federal law when they concluded that Petitioner

19   had not shown prejudice. *See Davis*, 512 U.S. at 458, 461 (discussing that law enforcement

20   officers may clarify ambiguous requests for counsel). Hence, Petitioner's claims that her

21   trial counsel should have moved to suppress her statements to law enforcement under the

22   Fifth Amendment are without merit and will be denied.

23   **Sixth Amendment**

24         Petitioner contends that her trial counsel should have challenged her statements to

25   law enforcement under the Sixth Amendment right to counsel. (Doc. 6 at 8.) The state court

26   did not err in denying this claim because the Sixth Amendment right to counsel had not

27   attached during the statements; hence, the trial counsel's performance was not deficient

28

and there was no reasonable probability that the statements would have been suppressed under the Sixth Amendment.

The Sixth Amendment right to counsel attaches "at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008); *see McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) ("[The Sixth Amendment] does not attach until a prosecution is commenced, that is, 'at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984))); *Anderson v. Alameida*, 397 F.3d 1175, 1180 (9th Cir. 2005) (concluding "no right to counsel attaches at arrest or at an extradition hearing"). No judicial proceeding had commenced against Petitioner before her statements to law enforcement.

Petitioner has not stated a colorable claim that the state courts' rulings were objectively unreasonable or contrary to established federal law in denying her claim that her trial counsel was ineffective in not moving to suppress her statements under the Sixth Amendment right to counsel. *See Richter*, 562 U.S. at 100; *Strickland*, 466 U.S. at 688.

Petitioner's claim in Ground Three lacks merit and will be dismissed.

## EXPANDING THE RECORD

Petitioner requests to expand the record and add several different transcripts and police reports under Rule 7 of the Rules Governing § 2254 Cases. (Doc. 21.) This request attempts to admit evidence relevant to whether Petitioner was in custody during her interview with Officer Brady and whether her second interview with Detective Barber was coerced after he threatened custody of her daughter. *Id.* at 5–9.

Rule 7 permits judges to expand the record if the petition is not dismissed. For the reasons explained above, this petition will be dismissed; thus, this motion will be denied.

## REQUEST FOR RELEASE

"In the habeas context, this court has reserved bail for 'extraordinary cases involving special circumstances or a high probability of success.'" *United States v. Mett*, 41 F.3d

1281, 1282 (9th Cir. 1994), *as amended* (Feb. 8, 1995) (quoting *Land v. Deeds*, 878 F.2d 318, 318 (9th Cir. 1989)). The Ninth Circuit has not resolved whether this Court may grant release pending resolution of a habeas corpus petition. *See In re Roe*, 257 F.3d 1077, 1080 (9th Cir. 2001) (noting disagreement among circuits and specifically declining to resolve whether release may be granted pending a decision by district court on habeas petition).

Assuming this Court has jurisdiction, the release of a habeas petitioner is governed by Rule 23, Fed. R. App. P. *See Marino v. Vasquez*, 812 F.2d 499, 508 (9th Cir. 1987). Additional factors to be considered include:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (explaining that general standards for stay are appliable to request for release in habeas).

Here, Petitioner has not provided a strong showing that she is likely to succeed on the merits. The Court has found that the Amended Petition fails on the merits. Petitioner has not shown that this matter involves special circumstances either. Thus, Petitioner's motion for release (Doc. 22) will be denied.

## REQUEST FOR HEARING

Petitioner has requested a hearing on the procedural defaulted of the claims. (Doc. 23.) The Court addressed the merits of Petitioner's claim that any defaulted claims should be excused. As explained above, her argument is without merit as it attempts to excuse defaulted substantive claims under *Martinez. Id.* at 4-5. Accordingly, this motion will be dismissed.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing § 2254 Cases provides that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *See* 28 U.S.C. §2253(c); Fed. R. App. P. 22(b)(1); *Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008); *Porter v. Adams*, 244 F.3d 1006, 1007 (9th Cir. 2001). "The petitioner

must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the court does not reach the underlying constitutional claim and denies a habeas corpus petition on procedural grounds, a certificate of appealability "should issue when the prisoner shows 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Jones v. Ryan*, 733 F.3d 825, 832 n.3 (9th Cir. 2013) (quoting *Slack*, 529 U.S. at 484).

The Court declines to issue a certificate of appealability concluding that jurists of reason would not find its ruling debatable.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (Doc. 6) is dismissed with prejudice.

**IT IS HEREBY ORDERED** that Petitioner's motions (Docs. 21, 22, 23) are denied.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and close this case.

**IT IS FURTHER ORDERED** that the certificate of appealability is denied.

Dated this 21st day of October, 2021.

Honorable D. Thomas Ferraro
United States Magistrate Judge